IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RODNEY EARL WEBB, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:21-cv-01090-X (BT) |
| | § | |
| RAQUEL JONES, et al. | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

*Pro se* Plaintiff Rodney Earl Webb filed this 42 U.S.C. § 1983 lawsuit against the State of Texas, the Honorable Judge Raquel Jones of the 203rd Criminal District Court in Dallas, Parkland Health and Hospital System, and the Dallas County Sheriff's Department. *See* ECF No. 7 at 3. The Court granted him leave to proceed *in forma pauperis*, *see* ECF No. 5, and withheld service of process pending judicial screening. Now, for the reasons stated, the District Court should dismiss without prejudice Webb's claims against the State of Texas and Judge Jones in her official capacity and dismiss with prejudice all his remaining claims.

**Background**

Webb filed an original complaint naming only the State of Texas and Judge Jones. *See* ECF No. 3. But, pursuant to Federal Rule of Civil Procedure 15, he filed an amended complaint, which, together with his responses to a Magistrate Judge Questionnaire (MJQ) (ECF No. 9), constitute the operative pleading in this matter. *See King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (noting that an amended

1

complaint supersedes the original); *Swaringen v. Bell,* 2019 WL 2870951, at *3 (N.D. Tex. June 13, 2019), *rec. accepted* 2019 WL 2869825 (N.D. Tex. July 3, 2019) (noting that responses to court questionnaires become part of the pleadings).

By these pleadings, Webb alleges that, in August 2019, four units of Dallas Police Department Officers and detectives surrounded him in his truck at a drive-through at a Taco Bell restaurant. ECF No. 7 at 5. The officers did not employ sirens, but they did point AR-15 assault rifles at Webb. ECF No. 7 at 5. "The Dallas Sheriff" assaulted Webb by slamming him to the concrete. ECF No. 7 at 5. Webb does not, however, name any Dallas police officer as a defendant.

Webb further claims that he was "roughed up" while in the Dallas County Jail and placed in a "cold holding cell with no blankets of [sic] anything else to cover up with." ECF No. 10 at 7. He asked unidentified officers to "produce a warrant," but they refused to show it to him. ECF No. 10 at 7. The officers made him undress in front of other prisoners, which humiliated him in violation of policy. ECF No. 10 at 7.

Webb also names Parkland Hospital as a defendant, alleging that that the staff there wronged him by "performing a CT scan on him" that lasted over an hour (exposing him to radiation) and by not removing the handcuffs or the chains from his waist or ankles during the CT scan. ECF No. 10 at 2.[1]

---

[1] Webb attached medical records to his amended complaint, which indicate that he went to the hospital because of an injury he sustained during his jail intake when "he was apparently forced to the ground." ECF No. 7 at 15. There is no injury reported in relation to the arrest at Taco Bell.

2

And finally, Webb sues Judge Raquel Jones of the 203rd Criminal District Court in Dallas for "sending the police department without a valid warrant" to arrest him.[2] ECF No. 10 at 4.

**Legal Standards**

Jones's complaint is subject to preliminary screening under 28 U.S.C. § 1915(e)(2), pursuant to which a district court may summarily dismiss a complaint filed *in forma pauperis* if it concludes the action is: (1) frivolous or malicious; (2) fails to state a claim on which relief may be granted; or (3) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

To state a claim upon which relief may be granted, a plaintiff must "plead enough facts to state a claim to relief that is plausible on its face[,]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level[.]" *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

And, "[a]lthough pleadings filed *pro se* are generally held to less stringent standards than those drafted by lawyers, *pro se* litigants must still reasonably

---

[2] The arrest led to charges against Webb for failure to register as a sex offender in case F-1976001 in the 203rd Criminal District Court in Dallas. Court records show that Webb entered a plea pursuant to a non-adjudication of guilt. https://www.dallascounty.org/criminalBackgroundSearch/defendant_detail?ln=04 (last visited March 25, 2022).

3

comply with procedural rules." *Miller v. Lowe's Home Ctrs. Inc.*, 184 F. App'x 386, 389 (5th Cir. 2006) (per curiam) (citing *Grant v. Cuellar*, 59 F.3d 523, 524-25 (5th Cir. 1995)).

## Analysis

A. <u>The Eleventh Amendment bars Webb's claims against the State of Texas.</u>

"The Eleventh Amendment prohibits a private citizen from bringing suit against a state in federal court unless the state consents." *Daigle v. Gulf State Utilities Co., Local Union Number 2286*, 794 F.2d 974, 980 (5th Cir. 1986) (citing *Hans v. Louisiana*, 134 U.S. 1, 10 (1890)). "The Supreme Court has held that Congress did not abrogate states' sovereign immunity in passing section 1983." *Bernofsky v. Road Home Corp.*, 741 F.Supp.2d 773, 780 (W.D. La. 2010) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989); *Quern v. Jordan*, 440 U.S. 332, 341 (1979)). Here, Webb has named the State of Texas as a defendant but has not identified any waiver of sovereign immunity. Thus, the Eleventh Amendment bars his claims against the State of Texas, and those claims should be dismissed without prejudice. *See United States v. Tex. Tech Univ.*, 171 F.3d 279, 286 n.9 (5th Cir. 1999).

B. <u>Webb's claims against Parkland Hospital are not cognizable, and his allegations fail to establish deliberate indifference.</u>

Webb sues Parkland Hospital for subjecting him to a CT scan that lasted over an hour and for not removing his handcuffs and chains during the procedure. Initially, section 1983 "provides a federal cause of action for the deprivation, under

4

color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). To state a claim under § 1983, a plaintiff must allege facts that show that he has been deprived of a right secured by the Constitution and laws of the United States and that the deprivation occurred under color of state law. *See Flagg Bros., Inc., v. Brooks*, 436 U.S. 149, 155 (1978).[3] The requirement that the deprivation occur under color of state law is also known as the "state action" requirement. *Bass v. Parkwood Hosp.*, 180 F.3d 234, 241 (5th Cir. 1999). And a private party will be considered a state actor for § 1983 purposes only in rare circumstances. *See Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992). Parkland Hospital is considered a state actor for purposes of § 1983, but Webb's claims against it fail for other reasons. *See Beamon v. Parkland Hosp.*, 2008 WL 4061417, at *2 (N.D. Tex. Aug. 20, 2008) (noting the Dallas County Hospital District, doing business as Parkland Health and Hospital System, is a political subdivision of the State of Texas); *see also* TEX. HEALTH & SAFETY CODE ANN. § 281.001, et seq. (West 2015).

First, Webb's suit appears to be premised upon a theory of vicarious or *respondeat superior* liability. He does not sue the doctors and medical staff that

---

[3] Webb also references the Universal Declaration of Human Rights in his responses to the MJQ. *See* ECF No. 10 at 4. But the Universal Declaration of Human Rights does not create a private right of action. *See Sosa v. Alvarez-Machain*, 542 U.S. 692, 734-35 (2004). So, any claims that Webb makes pursuant to the Declaration lack merit.

5

treated him, only the hospital. But "Parkland Hospital is not subject to suit under a theory of vicarious liability." *Gaines v. Brown*, 2021 WL 2517703, at *3 (N.D. Tex. May 18, 2021), *rec. accepted* 2021 WL 2516452 (N.D. Tex. June 18, 2021) (citing *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 694 (1978) ("local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents"). "It is well established that a local government entity does not automatically incur § 1983 liability for injuries caused solely by its employees and, therefore, cannot be held liable on a *respondeat superior* theory." *Gaines*, 2021 WL 2517703, at *3 (citations omitted). Such entities may only be liable upon a showing that an official policy or custom caused the alleged constitutional deprivation. *See Monell*, 436 U.S. at 694-95. Webb does not attempt to make that showing.

And second, even assuming Webb had properly alleged some policy or custom on the part of Parkland Hospital, he fails to allege deliberate indifference. To establish liability in connection with a claim for deliberate medical indifference, a prisoner must be able to show he was denied appropriate medical care and that denial constituted "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976). A defendant acts with deliberate indifference "only if [(A)] he knows that inmates face a substantial risk of serious bodily harm and [(B)] he disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). A plaintiff can show deliberate indifference in this context by showing that the defendant "refused to treat him,

ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id.* at 838. On the other hand, unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances. *Hall v. Thomas*, 190 F.3d 693 (5th Cir. 1999); *Stewart v. Murphy*, 174 F.3d 530, 537 (5th Cir. 1999); *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995); *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991).

Webb's medical indifference claim is premised upon the Parkland Hospital staff subjecting him to a CT scan that lasted "over an hour" with his metal chains and handcuffs still on, exposing him to "radiation damage." *See* ECF No. 10 at 3. Regarding the failure to remove the chains and handcuffs, Webb does not allege such failure caused or exacerbated any serious medical need or condition, which defeats a medical indifference claim. *See Estelle*, 429 U.S. at 105-06 (a medical indifference claim requires deliberate indifference to "serious medical needs").

As for Webb's CT scan, if he is alleging that the staff's decision to give him a scan at all violates his constitutional rights, the claim fails because a prisoner's disagreement with his medical treatment does not establish deliberate indifference. *See Stewart*, 174 F.3d at 537. If his claim is that the staff was negligent, again this is insufficient to state a medical deliberate indifference claim. The claim likewise fails if Webb is alleging that the staff was deliberately indifferent for giving him a CT scan that lasted over an hour. While, in some instances,

7

deliberate indifference may be inferred from the obviousness of the risk of a certain course of treatment, that is not the case here. *See Petties v. Carter*, 836 F.3d 722, 729 (7th Cir. 2016) (noting that "[i]f a risk from a particular course of medical treatment (or lack thereof) is obvious enough, a factfinder can infer that a prison official knew about it and disregard it") (citations omitted). Webb does not allege that a CT-scan is such an inherently dangerous procedure that knowledge of an excessive risk can be inferred from the scan's duration; nor are there allegations that the duration of Webb's scan was even abnormal. At bottom, Webb does not plead facts sufficient to make deliberate indifference on the part of the Parkland Hospital staff plausible as opposed to merely speculative.

 C. <u>The Dallas Sheriff Department is a non-jural entity, and Webb fails to plead a plausible *Monell* claim against Dallas County.</u>

Webb sues the Dallas County Sheriff's Department. But a plaintiff may not bring a civil rights action against a servient political agency or department unless such agency or department enjoys a separate and distinct legal existence. *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313-14 (5th Cir. 1991). In *Darby*, the Fifth Circuit held that "unless the true political entity has taken explicit steps to grant the servient agency with jural authority, the agency cannot engage in any litigation except in concern with the government itself." *Id.* at 313. A county sheriff department is not a jural entity that can be sued under § 1983. *See, e.g.*, *Gonzalez v. Lew Sterrett Dallas County Jail*, 2008 WL 4921428, at *2 (N.D. Tex. Nov. 13, 2008) (dismissing claim against Dallas County Sheriff's Department because it is

8

a non-jural entity for purposes of § 1983) (collecting cases). Accordingly, the Court should dismiss Webb's claims against the Dallas County Sheriff's Department.[4]

But even if Webb sued the correct entity—Dallas County—he fails to state a claim. To establish a claim for municipal liability under § 1983, "a plaintiff must show the deprivation of a federally protected right caused by action taken 'pursuant to an official municipal policy.'" *Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). "A plaintiff must identify: '(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom.'" *Id.* at 541-42. (citing *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)) (further citation omitted).

The MJQ asked Webb to state the official policy or custom of Dallas County pursuant to which his rights were allegedly violated. He listed sections 3.00 and 3.02 of the Dallas County Sheriff Department Civil Rules and Regulations. Section 3.00, entitled "Compliance with code of conduct and general orders" states that:

> All department employees shall obey the rules and regulations of the department by complying with the current Code of Conduct and the current general Orders Manual, division, or bureau standard operating procedures which are all incorporated into this document as if printed therein.

---

[4] This analysis applies with equal force to the extent that Webb also intends to sue the 203rd Criminal District Court and the Dallas Police Department.

*See* Appendix A, Dallas County Sheriff's Department Civil Service Rules and Regulations, § 3.00. Section 3.02, states, as follows:

> It is the policy of Dallas County and the sheriff's department to provide all employees a work environment that is free from any form of unlawful harassment, any hostile work environment based on unlawful harassment, or any retaliatory action against an employee who reports unlawful harassment.

*See id.* at § 3.02.

Thus, Webb appears to rely upon a deviation from a lawful policy, as opposed to an unconstitutional Dallas County policy or custom. But the policy Webb cites is clearly not applicable to him, as he is not an employee of the Dallas County Sheriff's Department. If Webb is claiming that he was harassed in contravention of some other unspecified Dallas County Sheriff's Department policy, the claim fails. While a single action by a final policymaker can, in limited circumstances, be the basis for municipal liability, Webb has not alleged that any final policymaker took any action that violates his rights. *See Davidson v. City of Stafford, Texas,* 848 F.3d 384, 395 (5th Cir. 2017) (noting that an unconstitutional policy may be found when a policymaker performs the specific act that forms the basis of the § 1983 claim).[5]

---

[5] Webb does state that the "Dallas Sheriff" assaulted him by throwing him onto the concrete during his arrest, and the Court does not understand Webb to claim that the actual Dallas County Sheriff was involved in his arrest. If Webb is claiming that, he still fails to state a municipal liability claim because he has not alleged facts showing a constitutional violation. An excessive force claim requires an actual injury, which Webb does not allege in relation to his arrest, and which is not apparent from the medical records that he submitted. *See, e.g., Flores v. Rivas,* 2020 WL 563799, at *6 (W.D. Tex. Jan. 31, 2020) (noting that, to state an excessive

In sum, Webb sued a non-jural entity, but even if he sued Dallas County, the claims fail because he does not plead the existence of policy, custom, or single action by a final policymaker.

D. <u>The Eleventh Amendment bars Webb's official-capacity claim against Judge Jones, and absolute immunity would bar any individual-capacity claim against her.</u>

Webb sues Judge Raquel Jones of the Dallas County 203rd Criminal District Court in her official capacity for "send[ing] the police department" without a valid warrant. *See* ECF No. 7 at 2; ECF No. 10 at 4. For relief, as against all defendants, he wants the Court to issue an injunctive order to "stop the harassing," as well as $2,500,000 in damages. *See* ECF No. 7 at 6.

As for the official capacity claim, while absolute judicial immunity is not applicable, Eleventh Amendment immunity applies. As noted, and subject to an inapplicable exception, the Eleventh Amendment bars claims against states, state agencies, or entities that may be considered an "alter ego" or "arm" of the state. *See Perez v. Region 20 Educ. Service Center*, 307 F.3d 318, 326 (5th Cir. 2002). "Texas judges are entitled to Eleventh Amendment immunity for claims asserted against them in their official capacity." *See, e.g.*, *Warnock v. Pecos County, Tex.*, 88 F.3d 341, 343 (5th Cir. 1996). So, Webb's official capacity claim against Judge Jones should be dismissed without prejudice pursuant to the Eleventh Amendment.

---

force claim, a plaintiff must allege at least "'some injury'") (quoting *Flores v. City of Palacios*, 381 F.3d 391, 397 (5th Cir. 2004)).

And an individual-capacity claim would lack merit as well because judges are absolutely immune from monetary liability "for all judicial acts that are not performed in the clear absence of all jurisdiction, however erroneous the act and however evil the motive." *Johnson v. Kegans*, 870 F.2d 992, 995 (5th Cir.), *cert. denied*, 492 U.S. 921 (1989) (citing *Stump v. Sparkman*, 435 U.S. 349 (1978)). To determine whether an act is "judicial" in nature the Fifth Circuit considers: "(1) whether the precise act complained of is a normal judicial function; (2) whether the acts occurred in the courtroom or appropriate adjunct spaces such as the judge's chambers; (3) whether the controversy centered around a case pending before the court; and (4) whether the acts arose out of a visit to the judge in his official capacity." *Adams v. McIlhany*, 764 F.2d 294, 297 (5th Cir. 1985) (citing *McAlester v. Brown*, 469 F.2d 1280, 1282 (5th Cir. 1972)). Using those standards, courts routinely find the issuance of an arrest warrant to be a judicial act. *See*, *e.g.*, *Brattain v. Spurger*, 154 F. App'x 411 (5th Cir. 1998); *Watson v. Interstate Fire & Cas. Co.*, 611 F.2d 120, 123 (5th Cir. 1980) ("[T]he issuance of an arrest warrant is a common judicial function."); *Bevill v. City of Quitman, Texas*, 2020 WL 1065430, at *12 (E.D. Tex. Mar. 5, 2020) ("Issuing an arrest warrant and attaching certain conditions of bond to that warrant are normal judicial functions routinely carried out by judges."). Thus, Judge Jones's issuance of an arrest warrant was judicial in nature and warrants absolute immunity absent a showing that the action was taken in the complete absence of all jurisdiction.

Webb does not make that showing. Nothing in his complaint, even liberally construed, suggests that Judge Jones was without the jurisdiction to issue a warrant for his arrest. Judge Jones enjoys immunity from Webb's claim for monetary damages against her, so that claim should be dismissed.

Finally, if Webb's vague request for this Court to issue an order to "stop the harassment" could be liberally construed as a request for some type of injunctive relief as to Judge Jones, it is not cognizable. "Since 1996, Section 1983 precludes injunctions action against judicial officers acting in their judicial capacity." *Whole Woman's Health v. Jackson*, 13 F.4th 434, 443-44 (5th Cir. 2021) (citing § 1983, which provides in relevant part that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable").

In short, Webb's claims against Judge Jones lack merit and should be dismissed.

**Leave to Amend**

The Fifth Circuit is inclined to give *pro se* plaintiffs several opportunities to state a claim upon which relief can be granted. See *Scott v. Brynes*, No. 3:07-CV-1975-D, 2008 WL 398314, at *1 (N.D. Tex. Feb. 13, 2008); *Sims v. Tester*, No. 3:00-CV-0863-D, 2001 WL 627600, at *2 (N.D. Tex. Feb. 13, 2001). Courts therefore typically allow *pro se* plaintiffs an opportunity to amend their complaints when the action is to be dismissed pursuant to a court order. See *Robinette v.*

13

*Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 3:96-CV-2923-D, 2004 WL 789870, at *2 (N.D. Tex. Apr. 12, 2004); *Sims*, 2001 WL 627600, at *2. "Granting leave to amend is not required, however, if the plaintiff has already pleaded his 'best case.'" *Brewster v. Dretke*, 587 F.3d 764, 768 (5th Cir. 2009) (citation omitted).

That is the case here. The Court already gave Webb a chance to clarify his claims through his responses to an MJQ. He was specifically instructed that the Court perceived the facts in his filings to be insufficient to state a claim and that the MJQ was intended to give him one final opportunity to "allege his best case." *See* ECF No. 9 at 1. He has pleaded his best case, and further leave to amend is not warranted.

## Conclusion

The Court recommends that Webb's claims against the state of Texas and Judge Jones in her official capacity be dismissed without prejudice pursuant to the Eleventh Amendment and that the remainder of Webb's claims be dismissed with prejudice for failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B).

SO RECOMMENDED.

Signed March 30, 2022.

                                       _____
                                       REBECCA RUTHERFORD
                                       UNITED STATES MAGISTRATE JUDGE

INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).